IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REBECCA A. ZAMORA,

      Plaintiff,

v.                                                                              No. CV 12-0048 RB/LFG

WELLS FARGO HOME MORTGAGE,
A Division of Wells Fargo Bank, N.A.,
and FEDERAL HOME LOAN MORTGAGE
CORPORATION,

      Defendants.


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Joint Motion to Dismiss filed by Defendants Wells Fargo Home Mortgage ("Wells Fargo") and Federal Home Loan Mortgage Corporation ("Freddie Mac"), (Doc. 18, filed February 24, 2012). Jurisdiction arises under 28 U.S.C. § 1332. The motion has been fully briefed and is now ready for decision. Having considered the submissions and arguments of the parties, the relevant law, and being otherwise fully advised, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

**I.      Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that plausibly, not merely possibly, entitles the plaintiff to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In considering a motion to dismiss, the court must look within the four corners of the complaint and accept all well-pleaded factual allegations as

true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted). However, the court need not accept legal conclusions contained in the complaint as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Generally, courts considering Rule 12(b)(6) motions must confine their review to the complaint and other pleadings; if the parties present matters outside the pleadings for the court's consideration, the motion may be converted to one for summary judgment. FED. R. CIV. P. 12(d). However, there are some exceptions. A court may consider documents attached to a plaintiff's complaint on a motion to dismiss without converting it. *See* FED. R. CIV. P. 10(c). Moreover, even if a plaintiff does not attach a document to the complaint, the court may consider documents that are referenced in the complaint if they are central to the plaintiff's claims and the parties do not dispute their authenticity. *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (citation omitted); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted).

## II.   Factual Background

Plaintiff Rebecca A. Zamora borrowed $200,000 from Wells Fargo Bank in 2008. (First Am. Supplemental Compl. and Pet. for Injunctive Relief, Doc. 5, at ¶ 9; Doc. 18 at 3; Note, Doc. 18-1, at 1). She executed a Mortgage in which she pledged property as security for her promise to repay the borrowed money. (Doc. 5 at ¶¶ 9-13; Mortgage, Doc. 18-2). The Note and Mortgage are owned by Freddie Mac and serviced by Wells Fargo. (Doc. 5 at ¶¶ 9-10, 79). Beginning in 2009, Ms. Zamora experienced financial difficulties that rendered her unable to make her loan

payments, and she sought the assistance of Wells Fargo, including requesting a loan modification under the Home Affordable Modification Program ("HAMP"). (*Id.* at ¶¶ 12-15, 21-23, 32).

HAMP is a program established by the U.S. Department of Treasury as a component of the Emergency Economic Stabilization Act ("EESA"), which Congress enacted in response to rapidly deteriorating financial market conditions in mid-2008. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012); Thomas M. Schehr & Matthew Mitchell, *The Home Affordable Modification Program and a New Wave of Consumer Finance Litigation*, 91 MICH. B.J. 38, 38 (June 2012). Through HAMP, the federal government has incentivized lenders and loan servicers to help struggling homeowners avoid foreclosure by modifying the monthly payments on eligible loans to affordable and sustainable levels. *See* 12 U.S.C. § 5219(a); Schehr & Mitchell, *supra*, at 38.

To determine a homeowner's eligibility for a loan modification, the Treasury set out a three-step process. First, the borrower must meet certain threshold requirements, including that the loan originated on or before January 1, 2009, the loan was secured by the homeowner's primary residence, and payments exceeded thirty-one percent of the homeowner's monthly income. *Wigod*, 673 F.3d at 556. Next, the servicer calculates a modification seeking to reduce the monthly payment to close to thirty-one percent of the homeowner's income. *Id.* at 556-57. Then, the servicer applies a Net Present Value ("NPV") test to assess whether it would be more profitable to modify the loan or allow it to go into foreclosure; modification is only required if the value of the modified mortgage exceeds the expected return after foreclosure. *Id.* at 557 (citation omitted).

If the borrower is eligible for a HAMP modification, the modification process consists of two steps. First, the servicer and homeowner implement a Trial Period Plan ("TPP") using the

calculated modified payment. *Id.* If the homeowner complies with the TPP, the servicer is required to offer a permanent modification. *Id.* (citation omitted). Significantly, under the original HAMP guidelines, which were in effect until 2010, a servicer could initiate a TPP based on a homeowner's undocumented representations about her finances, confirming her representations and determining final eligibility after the TPP was in effect. *Id.* (citing Supplemental Directive 09-01).

In late 2009, Wells Fargo, a participating HAMP servicer, sent Ms. Zamora a TPP entitled "Home Affordable Modification Program Loan Trial Period (Step One of Two-Step Documentation Process)." (Doc. 5 at ¶¶ 23, 32). The TPP required Ms. Zamora to make three payments, one each month for consecutive months, of $1,024.88. (TPP, Doc. 18-3, at 2). She signed the TPP on October 27, 2009, returned the signed TPP to Wells Fargo, and made three timely TPP payments, and her representations in the TPP continued to be true in all material respects. (*Id.* at 3; Doc. 5 at ¶¶ 33-35). She continued making timely TPP payments after the trial period ended, and she had made over twenty TPP payments as of the filing of her complaint. (Doc. 5 at ¶ 37). She did not receive any returned copy of the TPP from Wells Fargo, nor did she receive any information from Wells Fargo regarding the status of her loan modification until June 25, 2010, after she had made eight on-time payments. (*Id.* at ¶ 38). On that date, a Wells Fargo representative informed Ms. Zamora's attorney that she had been denied a permanent modification based on "insufficient income." (*Id.*). Ms. Zamora claims that the denial was based on an incorrect income and an improper NPV evaluation. (*Id.* at ¶¶ 111, 125).

Ms. Zamora submitted an appeal of the denial and requested the NPV scores used by Wells Fargo on June 28, 2010; she never received a response. (*Id.* at ¶¶ 39-40). Around October of 2010, Ms. Zamora brought her case to HAMP Escalations, a program operated by Freddie

Mac. (*Id.* at ¶ 48). Freddie Mac asked Wells Fargo to re-review Ms. Zamora's options. (*Id.* at ¶¶ 86-93).

Ms. Zamora alleges that she took actions in reliance on the TPP, including taking on additional jobs, working longer hours, decreasing her expenses, foregoing applying for bankruptcy, and undergoing credit counseling as required by the TPP. (*Id.* at ¶¶ 69-71). Ms. Zamora also alleges that she suffered damages related to Wells Fargo's denial of her loan modification, including damage to her credit and denials of credit. (*Id.* at ¶ 74).

This case was originally filed in state court in June of 2011. *Zamora v. Wells Fargo Home Mortgage*, No. CV 11-0870 JB/LFG, Doc. 10 at 1 (D.N.M. Oct. 4, 2011). The sole Defendant at the time, Wells Fargo, removed the case to federal court. *Id.*, Doc. 1 (Sept. 28, 2011). The presiding judge determined that the court lacked subject matter jurisdiction because the sole asserted jurisdictional bases were federal question jurisdiction and complete preemption, neither of which, it determined, applied to Ms. Zamora's state law claims. *Id.*, Doc. 34 at 1-2 (Dec. 14, 2011).

On remand, Ms. Zamora's complaint became immediately removable on diversity grounds, and Wells Fargo again removed the case to federal court. (Notice of Removal, Doc. 1). Following this second removal, Ms. Zamora amended her complaint, adding Freddie Mac as a Defendant. (Doc. 5). She asserts fifteen causes of action against one or both Defendants: (i) breach of loan trial period contract; (ii) breach of the covenant of good faith and fair dealing; (iii) Unfair Trade Practice Act ("UPA") violation by Wells Fargo; (iv) UPA violation by Freddie Mac; (v) promissory estoppel; (vi)[1] injunctive relief under the UPA; (vii) defamation by Wells Fargo; (viii) violation of the Fair Credit Reporting Act by Wells Fargo; (ix) violation of the Fair

---

[1] Ms. Zamora incorrectly numbered this and the remaining counts. She acknowledged this typographical error in her response to the motion to dismiss and adjusted the numbering of the claims accordingly.

Debt Collection Practices Act by Wells Fargo; (x) negligence as to Wells Fargo; (xi) negligence

as to Freddie Mac; (xii) failure to respond to a Qualified Written Request ("QWR") under the

Real Estate Settlement Procedures Act ("RESPA") by Wells Fargo; (xiii) violation of RESPA as

to the protection of credit ratings by Wells Fargo; (xiv) violation of the Truth in Lending Act;

and (xv) breach of contract in regard to the application of payments. For relief, Ms. Zamora

seeks compensatory and punitive damages, costs, and an injunction to prevent any foreclosure

action by Defendants. (Doc. 5 at 52).

## III.    Discussion

Following the enactment of HAMP, a slew of litigation by homeowners against lenders

and loan servicers ensued. Various legal strategies have been attempted by homeowners under

theories including direct liability, contract law, and tort law. Schehr & Mitchell, *supra*, at 39-40.

It is clear that the EESA did not create an express private right of action, 12 U.S.C. § 5229(a),

and courts considering direct liability claims under HAMP have uniformly rejected this

approach. *Wigod*, 673 F.3d at 559 n.4 (citations omitted) (collecting cases); *see, e.g.*, *Miller v.

Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012) ("Neither HAMP nor EESA

expressly creates a private right of action for borrowers against loan servicers."); *Lund v.

CitiMortgage, Inc.*, No. 2:10–CV–1167, 2011 WL 1873690, at *2 (D. Utah May 17, 2011)

(citations omitted). However, Ms. Zamora does not claim that the Defendants are directly liable

to her based of violations of HAMP. She instead alleges that the Defendants violated various

provisions of state and federal law, and she refers to HAMP to bolster those claims. Courts are

divided as to whether homeowners may assert state and federal claims for HAMP-related

improprieties. *See Wigod*, 673 F.3d at 559 n.4 (citations omitted); John R. Chiles & Matthew T.

Mitchell, *HAMP: An Overview of the Program and Recent Litigation Trends*, 65 CONSUMER FIN. L. Q. REP. 194, 198-200 (2011).

Defendants filed their joint motion to dismiss on February 24, 2012, alleging that relief is unavailable on the face of many of Ms. Zamora's claims. (Doc. 18). The motion does not address a few of Ms. Zamora's claims, including her claim for injunctive relief under the UPA, her RESPA claim related to the protection of credit ratings, and her claim of negligence against Freddie Mac. (Response to Defendants' Joint Motion to Dismiss, Doc. 30, at 15, 20, 22). Additionally, Ms. Zamora conceded her claim that Wells Fargo violated the Fair Debt Collection Practices Act. (*Id.* at 18). Accordingly, Ms. Zamora's Count IX shall be dismissed.

To cogently address the numerous arguments the Defendants have raised related to Ms. Zamora's remaining claims, I will proceed count by count and address the Defendants' arguments as they relate to each count.

**A.   Counts I & II – Breach of Contract based on Trial Period Plan & Breach of the Covenant of Good Faith and Fair Dealing**

Ms. Zamora alleges in Count I that the TPP constituted an offer by Wells Fargo, which she accepted by signing the documents and making three payments. (Doc. 5 at ¶¶ 113-14). She asserts that mutual assent was expressed through the writing, which she acknowledges Wells Fargo did not sign, and by Wells Fargo's acceptance of the payments. (*Id.* at ¶ 115). She contends that she gave consideration for the contract by undergoing credit counseling, providing documentation, and signing an affidavit of hardship. (*Id.* at ¶ 116). In Count II, she alleges that the Defendants violated the covenant of good faith and fair dealing by denying her the benefit of her bargain under the TPP. (*Id.* at ¶¶ 121-135).

The Defendants raise numerous arguments rebutting Ms. Zamora's claim that a valid contract existed. First, the Defendants assert that Ms. Zamora is, in essence, trying to enforce HAMP, crafting an end-run around the absence of a right of action by raising her claim in contract. (Doc. 18 at 10-12; Defs.' Reply in Supp. of their Mot. to Dismiss, Doc. 44, at 4-9). Next, they contend that the TPP was not an agreement to permanently modify the loan. (Doc. 18 at 14-17). Finally, they argue that the TPP is not an enforceable contract because Ms. Zamora did not provide consideration for a permanent modification. (*Id.* at 17-18).

The fatal misapprehension in this breach of contract claim is the assumption that the TPP constituted an offer by Wells Fargo to permanently modify the mortgage. In New Mexico, "[f]or a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Heye v. Am. Golf Corp., Inc.*, 80 P.3d 495, 498 (N.M. Ct. App. 2003) (citations omitted). Under principles of contract law, when "some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer." *Wigod*, 673 F.3d at 561 (quoting 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 1.11, at 31 (rev. ed. 1993)). Thus, "when the promisor conditions a promise on *his own* future action or approval, there is no binding offer." *Id.* (citing 1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 4:27 (4th ed. 2011)) (emphasis in original); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 26 (1981) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.").

The TPP signed by Ms. Zamora is not an enforceable offer for loan modification under its own terms. In the introduction, the TPP states:

> (A)fter I sign and return two copies of this Plan to the Lender, **the Lender will send me a signed copy of this Plan if I qualify for the Offer** or will send me written notice that I do not qualify for the Offer. **The Plan will not take effect unless and until both I and the Lender sign it** and Lender provides me with a copy of this Plan with the Lender's signature.

(Doc. 18-3, at 1 (emphasis added)). Regarding the manner by which the loan documents would be modified, the TPP stated, "If prior to the Modification Effective Date, . . . the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement . . . the Loan Documents will not be modified and this Plan will terminate." (*Id.*). Accordingly, the TPP was explicitly conditioned on Wells Fargo's future manifestation of assent by signing, so it did not constitute an offer. *See* RESTATEMENT (SECOND) OF CONTRACTS § 26 (1981). Ms. Zamora admits that Wells Fargo never sent her a signed copy of the TPP, (Doc. 5 at ¶ 115), and the TPP attached to the Defendants' motion clearly demonstrates that Wells Fargo did not execute the TPP, (Doc. 18-3 at 3).

Other courts have focused on these same provisions in TPPs that are unsigned by the servicer in determining that a TPP without a servicer signature is not a valid contract. *Rummell v. Vantium Capital, Inc.*, No. 12–10952, 2012 WL 2564846, at *6-7 (E.D. Mich. July 2, 2012); *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1067-68 (N.D. Cal. 2011); *Vida v. OneWest Bank, F.S.B.*, No. 10–987–AC, 2010 WL 5148473, at *5-6 (D. Or. Dec. 13, 2010); s*ee also Picini v. Chase Home Fin. LLC*, --- F. Supp. 2d ----, ----, 2012 WL 580255, at *6 (E.D.N.Y. Feb. 16, 2012) (citations omitted) ("These cases rely on language in the TPP to the effect that the mortgage lender was not obligated to modify the borrowers' loans until the borrower received a fully-executed permanent Modification Agreement. . . . This logic is persuasive . . . ."). In *Vida*, the court relied on the same language in a substantially similar TPP to conclude that it was not an enforceable offer. 2010 WL 5148473 at *6-7. Even the case that Ms. Zamora relies on in her

response contemplates that, after the homeowner signs the TPP and provides her financial documentation, the servicer has the opportunity to determine that the homeowner qualifies. *Wigod*, 673 F.3d at 562. Only when the servicer executes the TPP do the terms include "a unilateral offer to modify [the homeowner's] loan conditioned on her compliance with the stated terms of the bargain." *Id.*

Ms. Zamora argues that the language in the TPP is ambiguous and uncertain. (Doc. 30 at 9 n.2). Presumably, she is referring to a portion of the introduction and a portion of the final section. Language in the TPP's introduction indicates that if Ms. Zamora complied with the loan trial period and her representations to the lender made in the TPP remained true, then Wells Fargo would provide her with a Loan Modification Agreement. (Doc. 18-3 at 1). Toward the end of the TPP, it states, "If I comply with the requirements in Section 2 [make the trial payments] and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents . . . ." (*Id.* at 2-3). While it is true that "any uncertainties in a contract must be construed most strongly against the party who drafted it[,]" *Manuel Lujan Ins., Inc. v. Jordan*, 673 P.2d 1306, 1309 (N.M. 1983) (citations omitted), the language of the TPP was not ambiguous. It clearly states that the TPP would not take effect without the lender's signature, and the end of the TPP included a line on which Wells Fargo could sign, thereby executing the TPP. This argument is, therefore, without merit.

Ms. Zamora also cites three unpublished cases from district courts in California and one from a district court in Michigan for the proposition that the "sign and return" issue is one of fact that must be presented to the jury. (Pl.'s Surreply in Resp. to Def.'s Reply, Doc. 45, at 4). Two of these cases are distinguishable. In *Orozco v. Chase Home Fin., LLC*, No. 10–51090–D–13, 2011

WL 7646369 (E.D. Cal. Aug. 16, 2011), the plaintiff did not admit that the defendant did not sign the TPP, and, because it was conceivable that the plaintiff could obtain a copy of the TPP with the defendant's signature though discovery, the court concluded that the plaintiff had alleged sufficient facts to support the claim that there was a contract. *Id.* at *1. As the *Orozco* Court acknowledged, it was presented with a factual scenario distinct from a case in which it is undisputed that the servicer did not sign the TPP, as is the situation here. *Id.* The other distinguishable case, *Turbeville v. JPMorgan Chase Bank*, No. 10–01464, 2011 WL 7163111 (C.D. Cal. Apr. 4, 2011), does not address the signature issue at all.

The other two cases that Ms. Zamora cites, while factually similar, are unpersuasive because they rely on no controlling law, conflict with the contract law explained above, and lead to an absurd result. In *In re Ossman*, No. 1:11–bk–16788–MT, 2012 WL 315485 (C.D. Cal. Jan. 31, 2012), the court found that the plaintiff's allegation in the complaint that the TPP was "binding" was sufficient to state a claim for breach of contract at the motion to dismiss stage. *Id.* at *3. However, almost no law is cited in support of this conclusion. The court in *Darcy v. CitiFinancial, Inc.*, No. 1:10–cv–848, 2011 WL 3758805 (W.D. Mich. Aug. 25, 2011), found that the TPP was an offer by the bank even though it was not signed by the lender because the defendant acknowledged that the TPP was in effect. *Id.* at *5. As explained above, contract law, at least as it applies in New Mexico, is clear: there is no binding offer when the promisor conditions a promise on his own future approval. Furthermore, finding an offer in these circumstances would have absurd implications. At the time Ms. Zamora filled out the TPP, a loan servicer would provide the TPP based entirely on the homeowner's representations prior to verifying the information or computing the NPV to ensure that the loan modification would be equally or more profitable. If the TPP was a binding offer, conditioned only on the homeowner's

performance, a bank would be bound to modify a homeowner's loan even though the bank did not have an opportunity to determine whether the modification was in its financial interest.

Because this Court concludes that the TPP was not a contract as a matter of law, there is no need to address the Defendants' "end-run" or consideration arguments at this juncture. No relief is available on the face of this claim, so it shall be dismissed with prejudice.

Ms. Zamora's claim related to the covenant of good faith and fair dealing is based entirely on the TPP. Because the TPP did not constitute a contract, there can be no breach of the covenant of good faith and fair dealing. *See Sanders v. FedEx Ground Packaging Sys., Inc.*, 188 P.3d 1200, 1203 (N.M. 2008) (affirming that contracts impose the duty of good faith and fair dealing) (citations omitted); *Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 856-57 (N.M. 1994) (holding that breach of covenant is not available in tort or if there is no contract). Thus, no relief is available on Ms. Zamora's claim that the Defendants violated the covenant of good faith and fair dealing as a matter of law, and this count shall be dismissed.

### B.  Counts III, IV & VI – Unfair Trade Practices Act Claims

Ms. Zamora next alleges that the Unfair Practices Act ("UPA"), N.M. STAT. ANN. §§ 57-12-1 to -26, applies and that the Defendants engaged in unlawful trade practices by making false or misleading representations to her. (*Id.* at ¶¶ 137-44, 152, 154-57). She further alleges that Wells Fargo violated the UPA by holding her funds in a suspense account rather than applying them to the interest or principal. (*Id.* at ¶ 145). She asserts that all of Wells Fargo's conduct is attributable to Freddie Mac under the agency theory. (*Id.* at ¶ 153).

The Defendants argue that these counts fail to state a claim as a matter of law because UPA does not apply to actions expressly permitted under laws administered by federal or state regulatory bodies. (Doc. 18 at 19-20). Because all of Ms. Zamora's claims arise under HAMP

and because HAMP is a program administered by the federal government, they argue, the safe harbor provision of UPA applies. (*Id.*). In response, Ms. Zamora contends that the safe harbor provision is inapplicable because the Department of Treasury did not permit the wrongful denial of her loan modification and because Wells Fargo's actions, as violations of HAMP, were not expressly permitted by other law. (Doc. 30 at 12-14).

New Mexico's UPA, which renders unlawful any unfair or deceptive trade practices, does not "apply to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act." N.M. STAT. ANN. §§ 57-12-7 (West 2012). For the UPA exemption to apply, more than the mere existence of a regulatory body is required. *State ex rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1184 (N.M. Ct. App. 1987). "At a minimum, the regulatory body must actually administer the regulatory laws with respect to the party claiming the exemption, thereby exercising at least the modicum of oversight that the exempting language indicates is required." *Id.* Thus, the party claiming the exemption must have obtained permission from the regulatory body to engage in the business of the transaction, thereby subjecting that party to the regulatory body's oversight. *Id.* The phrase "expressly permitted" is narrowly construed, so the regulatory body must have expressly authorized the specific actions of the party claiming the exemption in a publicly accessible document. *Quynh Truong v. Allstate Ins. Co.*, 227 P.3d 73, 82-85, 88 (N.M. 2010).

The Defendants cite to several cases from Georgia that found a similar exemption in Georgia's version of UPA applicable to lender and servicer activities related to TARP. (Doc. 18 at 19). However, the New Mexico Supreme Court has clearly distinguished New Mexico's

construction of the UPA exemption from the approach taken in Georgia: "New Mexico has not taken the path of broad regulatory exemption based on the mere existence of a regulatory structure that has been followed in a number of other states, like Georgia, with other statutory approaches." *Quynh Truong*, 277 P.3d at 86 (citation omitted) (internal quotation marks omitted). Accordingly, the Georgia cases are inapplicable.

Nearly all of the unfair, deceptive and unconscionable acts alleged in the complaint do reference HAMP, but each also alleges that Wells Fargo and Freddie Mac made false or fraudulent representations to Ms. Zamora. The Defendants do not and cannot argue that making false representations was authorized by the Department of Treasury. Rather, their argument is that the UPA exception applies because they were operating within a regulated field. However, the exception does not apply to entire fields merely because they are regulated; rather, to fall within the exception, each specific allegedly unfair act must be expressly authorized by a state or federal regulatory body. *Id.* at 88. Because the Department of Treasury did not authorize lenders or servicers of loans to make false representations in connection with the implementation of HAMP, the Defendants' argument must fail.

The Defendants raise no further bases on which to dismiss Ms. Zamora's UPA claims. Accordingly, the Defendants' motion to dismiss these claims is denied. Because this Court will not dismiss Ms. Zamora's UPA claims at this time, Count VI of her complaint, which requests injunctive relief under the UPA and was not challenged by the Defendants, shall not be dismissed at this time.

## C. Count V – Promissory Estoppel

Ms. Zamora alleges that Wells Fargo promised her that it would modify her home loan if she made three TPP payments and that it would abide by HAMP. (Doc. 5 at ¶¶ 161-62). She

alleges that Freddie Mac is bound to Wells Fargo's agreements and also promised her that it would review the status of her loan modification. (*Id.* at ¶¶ 167-69). She further alleges that she reasonably relied on the promises because she thought the Defendants would convert the trial plan into a permanent modification and that she suffered a change in position as a result of the Defendants' actions and failures. (*Id.* at 163-64, 171-72).

In their motion to dismiss, the Defendants argue that, because the TPP does not constitute a promise to modify the loan, no promissory estoppel claim can be based on representations related to the TPP. (Doc. 18 at 20-23). Ms. Zamora counters that the TPP did constitute a promise and that, even if it did not, the Defendants could be subject to a promissory estoppel claim for "stringing [her] along." (Doc. 30 at 14-15).

The theory of promissory estoppel is an alternative theory of recovery when all other elements of a contract exist but consideration is lacking. *Strata Prod. Co. v. Mercury Exploration Co.*, 916 P.2d 822, 828 (N.M. 1996) (citation omitted). The elements of promissory estoppel in New Mexico are as follows:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Magnolia Mountain Ltd. P'ship v. Ski Rio Partners, Ltd.*, 131 P.3d 675, 682-83 (N.M. Ct. App. 2005) (quoting *Strata Prod. Co.*, 916 P.2d at 628).

At this point, the Defendants solely dispute the first element, the existence of an actual promise. As discussed above, the fatal issue for Ms. Zamora's breach of contract claim was that the TPP was not an offer by Wells Fargo and never became a contract; the problem was not that

consideration was lacking. Promissory estoppel is typically an alternative theory of recovery when consideration was not provided for a contract. Since Wells Fargo never returned a signed copy of the TPP to Ms. Zamora, it never made a clear and definite promise to modify Ms. Zamora's loan. Accordingly, Ms. Zamora's claim for promissory estoppel fails as a matter of law. *See Rummell*, 2012 WL 2564846, at * 8-9; *Grill v. BAC Home Loans Servicing LP*, No. 10–CV–03057–FCD/GGH, 2011 WL 127891, at *8 (E.D. Cal. Jan. 14, 2011).

### D.  Count VII – Defamation

Ms. Zamora next alleges that Wells Fargo defamed her by reporting her as in default and by failing to report that her loan had been modified. (Doc. 5 at ¶ 183). As a result of Wells Fargo's reports, Experian credit reporting bureau reflected that she had been "past due" and seriously delinquent on payments since April 2009. (*Id.* at ¶¶ 184-85). As a result, Ms. Zamora alleges that her reputation, including her credit, was harmed. (*Id.* at ¶ 190).

The Defendants argue that this claim must be dismissed as a matter of law because state law libel claims are barred by the express preemption contained in 15 U.S.C. § 1681t(b)(1)(F) of the Fair Credit Reporting Act ("FCRA"). (Doc. 18 at 26-28). Furthermore, because the TPP provides that her payments do not cure her default, no defamation claim is available. (*Id.* at 28-29). Finally, because she does not allege malice or willful conduct, her defamation claim is fatally flawed. (Doc. 44 at 17). Ms. Zamora argues that FCRA's express preemption provision does not apply where willful conduct or malice is alleged, and she requests leave to amend her complaint to clarify the level of willfulness. (Doc. 30 at 15-17).

In New Mexico, a prima facie case of defamation requires that a plaintiff allege the following elements: "a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the

plaintiff." *Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1236 (N.M. 1989) (citation omitted). The FCRA, though, states, "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). Ms. Zamora does not dispute that her FCRA claim arises under section 1681s-2. There are two exceptions to the express bar against state law claims related to the regulated subject matter, one under a section of Massachusetts state law and one under a section of California state law. *Id.* Clearly, neither exception applies in the case at bar, in which the alleged defamation arises under New Mexico state law.

Despite the apparently clear statutory language, district courts have struggled to determine whether it applies to bar state law defamation claims based on the furnishing of credit information when malice or willfulness is alleged. *Compare Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) (complete preemption), *with Carlson v. Trans Union, LLC*, 259 F. Supp. 2d 517, 520-22 (N.D. Tex. 2003) (partial preemption). This challenge arises because there is a presumption against the preemption of state law, *see Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 518 (1992), and because there is a conflicting provision of the FCRA, section 1681h(e). The conflicting provision prohibits a consumer from bringing "any action or proceeding in the nature of defamation . . . with respect to the reporting of information against any . . . person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).

The courts have taken three approaches in interpreting section 1681t(b)(1)(F): (1) "total preemption," in which courts find that section 1681t(b)(1)(F) preempts all state law causes of

action; (2) the "temporal" approach, looking to whether the claim arose before or after the furnisher of information received notice of the false information, and (3) the "statutory" approach, applying section 1681t(b)(1)(F) to statutory claims and section 1681h(e) to state common law claims. *Stich v. BAC Home Loans Servicing, LP*, No. 10–cv–01106–CMA–MEH, 2011 WL 1135456, at *9 (D. Colo. Mar. 29, 2011) (citing *Greene v. Capital One Bank,* No. 2:07–cv–687, 2008 WL 1858882, at *5–6 (D. Utah Apr. 23, 2008)).

In a cursory, unpublished treatment of this issue, the Tenth Circuit held in one sentence that state law claims based on an allegation that a bank furnished false and inaccurate information to credit reporting agencies were preempted by the FCRA. *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750-51 (10th Cir. 2009) (unpublished). Following *Pinson*, the district courts within this circuit considered but declined to follow its total preemption approach, holding that the total preemption approach is too restrictive and, by giving broad power to section 1681t, renders section 1681h(e) meaningless. *Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1252-54 (D. Colo. 2011); *Stich*, 2011 WL 1135456, at *9; *Wenner v. Bank of Am., NA*, 637 F. Supp. 2d 944, 952-54 (D. Kan. 2009); *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1070 (D. Colo. 2009).

Under either the temporal or statutory approach set forth above, state tort claims are not entirely precluded by the FCRA. Given the presumption against the preemption of state law, this Court must narrowly construe the scope and extent of the express preemption set forth in 15 U.S.C. § 1681t(b)(1)(F). In addition, these two approaches give effect to both sections 1681t(b)(1)(F) and 1681h(e). Because both the temporal and statutory approaches give effect to the provisions of the FCRA while maintaining the availability of some state tort claims, the Court declines to adopt the total preemption approach in interpreting section 1681t(b)(1)(F).

18

The Court need not conclusively weigh in on which of the two remaining approaches applies to the preemptive language of the FCRA. Both approaches require that a plaintiff allege willfulness or malice, *see* 15 U.S.C. § 1681h(e), and Ms. Zamora merely alleged that Wells Fargo's conduct was "at least reckless." Thus, an essential element of the prima facie case is currently absent from Ms. Zamora's defamation claim. The Defendants allege that another essential element, the falsehood of the report, is negated by language in the TPP. This argument is unpersuasive; the Defendants cannot argue that the TPP has no legal effect and then rely on its language regarding default to assert that Wells Fargo's report was truthful. Because of the absent element, though, the Defendants' motion to dismiss the defamation claim is granted without prejudice. To the extent that Ms. Zamora can allege in good faith under Rule 11 of the Federal Rules of Civil Procedure that Wells Fargo provided the information with malice or willful intent, she may amend her complaint.

### E.  Count VIII – FCRA Violation

Ms. Zamora alleges that Wells Fargo, a furnisher of consumer credit information, reported her as delinquent to credit reporting bureaus and included "wildly incorrect" payment amounts and dates in those reports. (Doc. 5 at ¶¶ 196, 198-99). After learning of the reports, Ms. Zamora alleges that she submitted a dispute of the negative reports to all national credit bureaus and to Wells Fargo, thereby providing Wells Fargo with actual notice of the improper reports. (*Id.* at ¶¶ 197, 204). She alleges that Wells Fargo took no action to correct the errors and that, as a result, she has been denied credit. (*Id.* at ¶¶ 203, 205).

The Defendants assert that the only available cause of action under the FCRA is for a negligent or willful failure to properly investigate a dispute after receiving notice from a credit reporting agency, and Ms. Zamora failed to allege that Wells Fargo received such notice. (Doc.

18 at 25-26). Further, she signed a TPP that stated that payments accepted during the trial period would not cure her default. (Doc. 18 at 26). Because it is undisputed that Ms. Zamora was delinquent on her obligation, the Defendants contend, she cannot bring a claim under the FCRA. (*Id.*). Ms. Zamora argues in opposition that she has not had the opportunity to conduct discovery but that, upon information and belief, Wells Fargo did receive notice from one of the three credit bureaus. (Doc. 30 at 17, 17 n.4). In the alternative, Ms. Zamora asks that she be granted an opportunity to amend her complaint or that the Court hold a decision in abeyance until she is able to conduct discovery. (*Id.* at 17-18).

The FCRA obligates furnishers of information like Wells Fargo to provide accurate information to credit reporting agencies, 15 U.S.C. § 1681s-2(a), and to take various steps upon receiving notice of a dispute from a credit agency, *id.* at § 1681s-2(b). It is undisputed that there is no private cause of action pursuant to section 1681s-2(a), but a private cause of action does arise under section 1681s-2(b). *See Sanders v. Mountain Am. Fed. Credit Union*, --- F.3d ----, 2012 WL 3064741, at *7 (10th Cir. July 30, 2012); *Pinson*, 316 F. App'x at 751. At this point, Ms. Zamora's complaint does not state a cause of action pursuant to section 1681s-2(b) because it omits an allegation that Wells Fargo received notice of a dispute from a credit agency. As with her defamation claim, the Defendants' motion to dismiss the FCRA claim is granted without prejudice. To the extent that Ms. Zamora can allege in good faith under Rule 11 of the Federal Rules of Civil Procedure that Wells Fargo failed to take the actions required pursuant to section 1681s-2(b) after receiving notice of a dispute from a credit agency, she may amend her complaint.

As to the Defendants' second argument, I again find their reliance on the language of the TPP unpersuasive. Moreover, Ms. Zamora's delinquency is not the sole issue; the furnisher of

information is required to provide accurate information, including the monetary amounts at issue. Ms. Zamora has alleged that the amount reported by Wells Fargo was "wildly incorrect." This allegation would be sufficient at this stage, should Ms. Zamora decide to amend her complaint.

### F.  Counts X & XI – Negligence

According to Ms. Zamora, the Defendants, as financial institutions, owed her a duty of care as a borrower and customer particularly with regard to the HAMP program and the reporting of credit information. (Doc. 5 ¶¶ 211-12, 224). Ms. Zamora alleges that the Defendants did not act with due care by failing to follow HAMP guidelines, reporting inaccurate payment amounts to credit unions, failing to follow industry standards for the receipt and processing of modifications, failing to provide Ms. Zamora a permanent modification, failing to permit her to appeal, failing to disclose the basis for the NPV determination, failing to find another modification program for her, and, as to Freddie Mac, failing to oversee Wells Fargo. (*Id.* at ¶¶ 215-18, 229-30). She also asserts that it was foreseeable that she would be harmed if the Defendants failed to properly process or manage the loan modification process. (*Id.* at ¶ 211). She alleges that she was damaged by these breaches of the duty of care. (*Id.* at ¶¶ 219, 229, 231).

The Defendants argue that lenders do not owe a duty of care to a borrower because their relationship is contractual in nature. (Doc. 18 at 23). Further, they contend that lenders do not owe a borrower any duty to modify a loan or even consider a modification. (*Id.* at 24). Finally, they assert that Ms. Zamora's claims are predicated upon duties imposed by TARP and HAMP regulations, and there is no authority supporting that such a claim is available. (Doc. 44 at 15). Ms. Zamora counters that lenders do owe borrowers a duty of care when it comes to servicing loans, particularly when they represent that they will assist the borrower. (Doc. 30 at 18). She also posits that violations of the HAMP guidelines may constitute evidence of a breach of duty.

(*Id.* at 19). Last, she argues that she was within the zone of risk of Wells Fargo's negligent managing of her loan, thus rendering the general duty of care owed by one person to another applicable. (*Id.* at 20).

To support a negligence claim, New Mexico state law requires that there be "a duty owed from the defendant to the plaintiff; that based on a standard of reasonable care under the circumstances, the defendant breached that duty; and that the breach was a cause in fact and proximate cause of the plaintiff's damages." *Thompson v. Potter*, 268 P.3d 57, 63 (N.M. Ct. App. 2011) (quoting *Romero v. Giant Stop-N-Go of N.M.*, 212 P.3d 408, 410 (N.M. Ct. App. 2009)). The Defendants here dispute the duty element, and, in New Mexico, the existence and scope of a defendant's duty of care is a question of law. *Id.* (citations omitted). A "[d]uty may be based on common law, statutory law, or general negligence standard." *Id.* (citing *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 166 (N.M. Ct. App. 2007)). In determining the existence and scope of a defendant's duty of care, courts should consider "the nature of the activity in question, the parties' general relationship to the activity, and public policy considerations." *Id.* (quoting *Edward C. v. City of Albuquerque,* 241 P.3d 1086, 1090 (N.M. 2010)) (alteration omitted). "To impose a duty, a relationship must exist that legally obligates a defendant to protect a plaintiff's interest, and in the absence of such a relationship, there exists no general duty to protect others from harm." *Id.* (quoting *Estate of Haar v. Ulwelling,* 154 P.3d 67, 70 (N.M. Ct. App. 2007)).

The relationship between Ms. Zamora and the Defendants, which Ms. Zamora alleges gives rise to a duty of care, is that of borrower and lender. There is no statutory law that imposes a duty of care in this circumstance. Ms. Zamora points to two provisions of the New Mexico Mortgage Loan Originator Licensing Act, N.M. STAT. ANN § 58-21B-13, -20, to support her

argument that the Defendants owed her a duty of care. (Doc. 30 at 19 n.5). The statute does support the existence of a fiduciary relationship between a mortgage loan originator and a borrower. N.M. STAT. ANN. § 58-21B-20(A). However, those provisions apply only to natural persons who originate mortgage loans and not to banks or loan companies. *Id.* at § 58-21B-3. Ms. Zamora has not pointed to any statutory provision that imposes a duty of care on lenders or loan servicers with regard to their customers. Moreover, HAMP unquestionably does not provide a private right of action, and Ms. Zamora does not cite to any New Mexico authority recognizing a duty of care stemming from HAMP guidelines. Thus, Ms. Zamora cannot avail herself of a statutory law to show that a duty of care exists.

At common law, "[t]here is no per se fiduciary duty between a borrower and a lender," *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 560 (10th Cir. 2001) (citation omitted) (referring to Colorado state law), nor is there typically any other relationship giving rise to a duty between a bank and its customer or borrower, 9 C.J.S. *Banks and Banking* § 248 (2012). A duty may only arise under special circumstances, such as if the lender undertakes activities outside the normal course of business with a borrower so as to establish a joint venture or a fiduciary relationship. *Torke v. Fed. Deposit Ins. Corp.*, 761 F. Supp. 754, 757 (D. Colo. 1991) (referring to Colorado state law). This Court has found no authority in New Mexico that addresses the circumstances under which a duty of care between a lender and borrower arises outside of the lender's duty regarding the disclosure of information to customers and third parties. *See R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 766 P.2d 928 (N.M. Ct. App. 1988); *Shea v. H.S. Pickrell Co., Inc.*, 748 P.2d 980 (N.M. Ct. App. 1987).

This Court recognizes that district courts across the country, even within individual districts, are divided as to whether financial institutions owe a common law duty of care to

borrowers in the servicing of a loan. *Compare Brown v. Bank of Am. Corp.*, No. 10–11085, 2011 WL 1311278, at *4 (D. Mass. Mar. 31, 2011) (finding no duty of care), *with Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10–03892, 2011 WL 1134451, at * 7 (N.D. Cal. Mar. 28, 2011) (holding that bank went beyond role as a silent lender and servicer by offering opportunity for loan modification), *and Speleos v. BAC Home Loans Servicing, L.P.*, 755 F. Supp. 2d 304, 310-11 (D. Mass. 2010) (finding no private cause of action under HAMP, but allowing the negligence claim to proceed). Generally, courts that have found a duty rest their conclusion concretely on applicable state common law exceptions to the rule that lenders do not owe a duty of care to their customers. *See Poppelreiter v. GMAC Mortg., LLC*, No. 1:11CV008–A–S, 2011 WL 2690165, at *3-4 (N.D. Miss. July 11, 2011).

Despite the division among courts outside this district and this circuit, it is clear that there is no support in New Mexico to depart from the general common law rule by imposing a duty of care on a lender or loan servicer in the servicing of a home loan. Moreover, the Defendants in this case did not exceed their role as lender and loan servicer. Rather, the Defendants acted within their respective roles when they undertook to evaluate possible repayment options under HAMP and reported information to credit reporting agencies. Accordingly, Wells Fargo owed no common law duty to Ms. Zamora.

Ms. Zamora contends that, in addition to the duties the Defendants owed her as borrower and loan servicer, Wells Fargo is liable to her under the zone of risk concept. (Doc. 30 at 20). Her reliance on this general negligence theory is unsound. Under the general negligence concept, "[t]he duty element . . . focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *v. Quality Pontiac*, 73 P.3d 181, 186 (N.M. 2003). In the New Mexico cases finding a duty pursuant to this theory, the

plaintiffs or their family members suffered severe physical injuries or death at the hands of a defendant with no other relationship to the plaintiff. *Herrera v. Quality Pontiac*, 73 P.3d 181, 184-85 (N.M. 2003); *Fernandez v. Walgreen Hastings Co.*, 968 P.2d 774, 776-77 (N.M. 1998); *Madrid v. Lincoln Cnty. Med. Ctr.*, 923 P.2d 1154, 1155 (N.M. 1996). Where the relationship between the parties is purely contractual in nature, a claim that the plaintiff was harmed by the defendant's acts or omissions performed because of the contract cannot sound in negligence under this theory. New Mexico has not strayed from the general rule that a lender does not owe a borrower a duty of care, and Ms. Zamora cannot skirt that general rule by asserting a claim under a theory designed to allow recovery for egregious conduct resulting in substantial emotional and physical injuries.

For these reasons, Wells Fargo owed Ms. Zamora no duty of care as a matter of law, and Wells Fargo's motion to dismiss the negligence claim against it shall be granted.

Ms. Zamora asserts that the Defendants did not challenge her claim of negligence against Freddie Mac. (Doc. 30 at 20-21). She is correct. The motion to dismiss speaks only of Wells Fargo and not the Defendants generally when addressing the negligence claim. (Doc. 18 at 23-24). Though their arguments apply equally to both Defendants, they failed to address Ms. Zamora's allegation that Freddie Mac was negligent. Accordingly, the Court will not dismiss this count at this time.

### G. Count XII – Failure to Respond to a Qualified Written Request

Ms. Zamora asserts that the Real Estate Settlement Procedures Act of 1974 ("RESPA") applies to her loan, the subject property, and Wells Fargo. (Doc. 5 ¶¶ 235-38). She claims that she sent a Qualified Written Request ("QWR") to Wells Fargo and that she did not receive a notification of receipt or a substantive response to the QWR. (*Id.* at ¶¶ 239-40). She alleges that

she incurred actual damages including emotional distress, uncertainty as to whether taxes or insurance are being paid, uncertainty as to the amounts claimed as due, and the costs of bringing legal action and retaining counsel. (*Id.* at ¶ 244).

In their motion to dismiss, the Defendants contend that Ms. Zamora's allegations do not demonstrate that she sent a QWR because she does not allege that the request related to the servicing of her mortgage. (Doc. 18 at 30-31). The Defendants also argue that she does not allege facts showing that she was proximately damaged by the failure to respond. (*Id.* at 31). Finally, the Defendants argue that the letter is not a QWR because it was sent after the initiation of litigation. (Doc. 44 at 17). Ms. Zamora asserts that her allegations are sufficient at this stage, and she attached a copy of the QWR for the Court's consideration. (Doc. 30 at 21).

For purposes of this motion, Defendants appear to concede that they are subject to RESPA. In relevant part, RESPA imposes on loan servicers a duty to respond to a borrower's inquiries or QWRs. 12 U.S.C. § 2605(e). Any "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that includes the name and account number of the borrower and seeks information relating to the servicing of the loan with sufficient detail to advise the servicer of what is sought constitutes a QWR. *Id.* at § 2605(e)(1). To relate to the servicing of the loan, the letter must request information about scheduled periodic payments from the borrower, payments of principal and interest, and/or any amounts received from the borrower. *Id.* at § 2605(i)(3). The borrower is also required to allege that she suffered actual damage due to the servicer's failure to respond to the QWR, though any actual damages will suffice. *Id.* at § 2605(f)(1). "In order to plead 'actual damages' sufficiently, the plaintiff must allege specific damages *and* identify how the purported RESPA violations caused those damages." *Moore v. Mortg. Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 122 (D.N.H.

2012) (quoting *Okoye v. Bank of N.Y. Mellon*, No. 10–cv–11563–DPW, 2011 WL 3269686, at

*17 (D. Mass. July 28, 2011)) (emphasis in original).

Ms. Zamora's claims pursuant to RESPA allege the requisite elements. The letter at issue

was sent by Ms. Zamora, states her name and account number, indicates repeatedly that it is a

QWR, and requests a number of specific pieces of information about her account including fees,

charges, amounts paid, and payments received. (September 13, 2011 Letter, Doc. 30-2). The

information requested clearly relates to the servicing of the loan, and the Defendants' contention

to the contrary is meritless. Furthermore, Ms. Zamora alleges that she received no response from

Wells Fargo and that, as a result, she incurred actual, specified damages that she tied to Wells

Fargo's failure to respond. At this stage in the litigation, her allegations of damages meet the

requirements of RESPA.

The Defendants present no legal authority for the proposition that a letter does not

constitute a QWR if it is sent after litigation is initiated, and this Court has found no authority

supporting that position. The initiation of a lawsuit does not terminate the borrower/servicer

relationship, and RESPA entitles Ms. Zamora to request information related to the servicing of

her loan through a QWR at any time.

Because Ms. Zamora alleged the elements necessary to establish a violation of RESPA

based on the failure to respond to a QWR, the Defendants' motion to dismiss her claims arising

under RESPA is denied.

## H.  Count XIV – Violation of Truth in Lending Act

Ms. Zamora alleges that she made loan payments to Wells Fargo for two years that it

accepted and failed to promptly credit to her home loan account. (Doc. 5 at ¶¶ 252-56). She

contends that Wells Fargo's method of handling those payments violated a provision of the Truth

in Lending Act ("TILA"), 15 U.S.C. § 1639f. (*Id.* at ¶ 252). She alleges that the violation resulted in damages including late fees, accrued interest, damage to her reputation and credit, emotional harm and distress, and the costs of bringing legal action and retaining counsel. (*Id.* at ¶¶ 258-59).

The Defendants ask the Court to dismiss this count for two reasons. First, they assert that the applicable section of TILA is not yet in full effect because the regulations implementing it have not been finalized. (Doc. 18 at 32). Second, they contend that the statute was not intended to apply retroactively. (*Id.*). Ms. Zamora counters that the statute is in effect and that her allegations relate to payments made after the date that the statute became effective. (Doc. 30 at 22-23).

The section of TILA under which Ms. Zamora asserts her claim requires a loan servicer to credit payment to a consumer's account as of the date of receipt unless the delay does not result in a charge to the consumer or a report of negative information to a credit reporting agency. 15 U.S.C. § 1639f(a). TILA was amended in 2010 by United States Public Law 111-203, Title XIV, § 1400, *et seq.* Some of the statutory amendments required the Federal Reserve Board to promulgate regulations. *See, e.g.*, Pub. L. 111-203, Title XIV, § 1420 (adding subsection (f) to 15 U.S.C. § 1638); *id.* at § 1433(e) (adding subsection (u) to 15 U.S.C. § 1639). Other amendments to TILA, including the section applicable here, did not require or permit the Board to enact regulations. Unlike the subsections that required implementing regulations, which have not yet been added to the United States Code, the section applicable here has been added to the Code. It is clear that 15 U.S.C. § 1639f has been enacted as law and was effective on the date that it was added to the Code, or July 24, 2010. *See* 15 U.S.C.A. § 1639f (West 2012).

As the Defendants point out, the amendments to TILA were prefaced by some language about their effective date, but this Court concludes that the language is inapplicable to section 1639f. Specifically, the preface states that required regulations must be prescribed and take effect within a set amount of time and that "a section, or provision thereof, of this title shall take effect on the date on which the final regulations implementing such section, or provision, take effect." Pub. L. 111-203, Title XIV, § 1400(c)(1) & (2). Because section 1639f does not require regulations, the language contained in this preface is inapposite.

The Court's conclusion is supported by the two cases that this Court has found alleging a violation of section 1639f. *Fenske-Buchanan v. Bank of Am., N.A.*, No. C11-1656, 2012 WL 1204930 (W.D. Wash. Apr. 11, 2012); *Burkett v. Bank of Am., N.A.*, No. 1:10CV68-HSO-JMR, 2011 WL 4565881 (S.D. Miss. Sept. 29, 2011). Though the defendants in those cases did not raise an argument that the statute was not yet in effect, both courts considered claims under section 1639f. In *Fenske-Buchanan*, the court concluded that the plaintiff had successfully pled a violation of section 1639f and denied the defendant's motion to dismiss the claim. 2012 WL 1204930 at *4. In *Burkett*, the court did dismiss the plaintiffs' claims because the factual allegations in their complaint, filed February 26, 2010 and amended October 19, 2010, predated the enactment of section 1639f. 2011 WL 4565881 at *1, 5. Both courts contemplated that the statute became effective when it was enacted and did not require implementing regulations.

As to the Defendants' second argument, that section 1639f does not apply retroactively, the Court concludes that Ms. Zamora has sufficiently pled that Wells Fargo violated section 1639f after the effective date. Accordingly, Ms. Zamora does not demand that the statute apply retroactively, and her TILA claim survives Defendants' motion to dismiss.

**I.   Count XV – Breach of Contract as to Posting of Payments**

Finally, Ms. Zamora alleges that the Defendants violated the terms of the Note and Mortgage related to the posting of her payments by failing to apply the funds to her account and/or failing to return the funds to her. (Doc. 5 at ¶¶ 263-65). She further asserts that the Note and Mortgage conflict as to payment terms, are ambiguous and confusing to a reasonable consumer, fail to specify which controls in a conflict, and could be unenforceable as an attempt to avoid RESPA and TILA duties. (*Id.* at ¶¶ 266, 268). Finally, she alleges that Freddie Mac is bound by the actions of its agent, Wells Fargo. (*Id.* at ¶ 272).

The Defendants contend that Ms. Zamora's allegations are conclusory, fail to include any factual allegations demonstrating a failure to comply with the Note and Mortgage, and ignore the provisions of the TPP that she executed. (Doc. 18 at 33-34; Doc. 44 at 20). Ms. Zamora asserts that she cannot determine any additional facts regarding the amount held or where that amount is held because Wells Fargo is in exclusive control of that information. (Doc. 30 at 23).

Ms. Zamora's breach of contract allegation based on the posting of payments is far from conclusory and does not lack factual allegations. As it relates to payment, the Note executed by Ms. Zamora and Wells Fargo provides that "[e]ach monthly payment will be applied as of its scheduled due date . . ." (Doc. 5 at ¶ 263). The Mortgage executed by Ms. Zamora and Wells Fargo states,

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights . . . but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to the Borrower.

(*Id.* at ¶ 264). Ms. Zamora asserts that these provisions were violated when Wells Fargo accepted her partial payments but did not apply them to her account or return the funds to her within a reasonable time. (*Id.* at ¶ 265). At this point, Ms. Zamora need not provide additional factual specificity. Her allegations are sufficient to support her breach of contract in the posting of payments claim, and Defendants' motion to dismiss this count is denied.

### J.   Alleged Violation of Rule 8

The Defendants conclude their motion by asking the Court to strike Ms. Zamora's entire complaint as unreasonably prolix and conclusory in violation of Federal Rule of Civil Procedure 8(a). They take issue with the fact that Ms. Zamora's complaint consists of fifty pages and assert that the factual bases for her claims could have been set forth more briefly. (Doc. 18 at 34). Ms. Zamora counters that, after the Supreme Court's decisions in *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, more than mere "notice pleading" is required. (Doc. 30 at 4-5).

The Court has discretion to dismiss a complaint or strike parts thereof when it fails to comply with Federal Rule of Civil Procedure 8(a) and is redundant, immaterial, argumentative or inflammatory. *See Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 198 F.R.D. 608, 609 (S.D.N.Y. 2001). While Ms. Zamora's complaint is far from "short and plain," her allegations are clear and detailed and the counts brought against the Defendants are neither redundant nor argumentative. The fact that the complaint is lengthy does not justify its dismissal, and the Defendants' motion to dismiss on this account is denied.

**THEREFORE,**

**IT IS ORDERED** that Defendants Wells Fargo and Freddie Mac's Joint Motion to Dismiss, (Doc. 18), filed on February 24, 2012, is **GRANTED IN PART** and **DENIED IN PART**. Ms. Zamora's Counts I, II, V, IX, and X are dismissed with prejudice. Her Counts VII

and VIII are dismissed without prejudice. The Defendants' motion is denied as to Ms. Zamora's

Counts III, IV, VI, XI, XII, XIII, XIV and XV, and the litigation may proceed on those claims.


_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**